**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WES DENKOV, on behalf of himself and all others similarly situated, ) ) ) ) Plaintiffs, ) ) Summer Infant (USA), Inc. a Delaware ) Corporation, and TOYS "R" US d/b/a BABIES ) "R" US, a Delaware Corporation, ) ) Defendants, ) | Case No. 09-CV-07513<br><br>CLASS ACTION<br>JURY DEMANDED |

**AMENDED COMPLAINT**

**Introduction**

1.      Plaintiff, Wes Denkov, on behalf of himself and others similarly situated, brings this Complaint against Defendants Summer Infant (USA), Inc. and Toys "R" Us (d/b/a Babies "R" Us) (collectively, "Defendants") to seek redress for the Defendants' sale of video baby monitors which broadcast the sights and sounds inside consumers' homes up to 350 feet away without encryption and without disclosure that the signals are unencrypted.

**Parties**

2.      Plaintiff, Wes Denkov is an individual who resides in Addison, Illinois.

3.      Defendant, Summer Infant (USA), Inc. ("Summer Infant") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Providence, Rhode Island.

4.      Summer Infant is engaged in the design, manufacture, distribution and sale of various products for ultimate use by the general public, including video baby monitors used by

parents to see and hear their babies who are in one room, often the baby's room, while they are elsewhere in their residence.

5. Defendant Toys "R" Us (d/b/a Babies "R" Us) (hereinafter "TRU") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Passaic County, New Jersey.

6. Defendant TRU is engaged in the sale of merchandise related to children and babies for ultimate use by the general public, including video baby monitors used by parents to see and hear their babies who are in one room, often the baby's room, while they are elsewhere in their residence.

## **Jurisdiction**

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1446, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332. CAFA vests United States District Courts with original jurisdiction when the aggregate amount in controversy for all class members exceeds $5,000,000 exclusive of interest and costs and any member of the class of plaintiffs is a citizen of a state different from any defendant.

8. Plaintiff is a citizen of the State of Illinois. Defendant Summer Infant is a citizen of the State of Rhode Island pursuant to 28 U.S.C. §§1332(c)(1) because its principal place of business is in Rhode Island. Defendant TRU is a citizen of the State of New Jersey pursuant to 28 U.S.C. §§1332(c)(1) because its principal place of business is in New Jersey. Thus, Plaintiff is a citizen of different State than either of the Defendants.

9. Defendants removed this action to this Court under CAFA. In doing so, Defendants stated that there is a "reasonable probability that the stakes [in this case] exceed the minimum" amount in controversy of $5,000,000 exclusive of interest and costs. According to Defendants the amount in controversy as required by CAFA is met for this action.

10. According to the sworn testimony of Maram Abdel-Azim, Summer Infant has manufactured and shipped more than 134,224 of the video baby monitors at issue that have been sold at Toys "R" Us d/b/a Babies "R" Us. The affidavit of Maram Abdel-Azim states that the "[r]etail price for Video Monitors has varied throughout the time TRU has sold the product. The lowest retail price for the Video Monitors was $99.99. The highest retail price for the Video Monitors was $109.99." Thus, Defendant's own testimony establishes an amount in controversy in excess of $13,421,057.76.

**Venue**

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), because the transactions at issue occurred in this district, Defendants conduct substantial business in this district, and Defendants have sufficient minimum contacts with this state and otherwise intentionally avail themselves to consumers in this state through the promotion, marketing, and sale of its products in this state, such that the exercise of jurisdiction by this Court is permissible under traditional notices of fair play and substantial justice.

**Background Facts**

12. It is common knowledge that consumers purchase video baby monitors to monitor their children inside the privacy of their own homes as a safety and convenience

measure. Thus, it is foreseeable that the privacy and the personal safety of the consumers would be compromised by the use of non-encrypted devices, especially when the devices broadcast the children's images, the inside of the home and the activities going on within the home a great distance outside of the consumers' homes, and especially if the consumer is unaware that the device is not encrypted.

13. Since baby monitors have been on the market, first in a form that allowed parents to monitor only the sounds coming from the room, and more recently, allowing the visual display of the room with the base unit, monitors have become as much a staple for a nursery as diapers.

14. Video monitors have become sufficiently popular that they are often included on "baby registries" created to facilitate gift giving for baby showers and newborn gifts. TRU allows its customers to create baby registries for products sold by the company.

15. Parents and caregivers of infants have come to rely on the ability to monitor the safety and well-being of infants in their care through monitor devices.

16. Such safety includes not unknowingly broadcasting the child's image in an unencrypted signal to the general public. It also includes not unknowingly broadcasting the images of the caregivers, the inside of the home and the actions taking place within the home.

*The Video Monitor At Issue*

17. According to Summer Infant's website, the video baby monitor at issue in this case, "Summer Day and Night Video Monitor", item # 02220 ("Video Monitor"), is only sold at

Babies "R" Us. The Babies "R" Us website similarly represents that it is the "exclusive" seller of the Video Monitor.[1]

19. 18. The Video Monitor has a manufacturer's stated retail price of $99.99.

19. Defendant Summer Infant sold distributed and shipped to Defendant TRU the Video Monitors that were purchased by Plaintiff and members of the Class. Thus, the Defendants introduced the Video Monitors into commerce.

20. The Video Monitor consists of two components: (1) a base unit which is switched to "on" and placed in the room where the baby is, typically the nursery; and (2) a receiving unit that receives the audio and/or video transmitted by the base unit. The receiving unit is portable and often carried to the room in the house where the parents or caregivers will be located.

21. The base unit and receiving unit are packaged, distributed, and sold together as one product.

22. The Video Monitor's box states that it allows "you to monitor [your] baby from anywhere in the home" and "see and hear [your] baby for peace of mind."

23. The Video Monitors are unencrypted. Therefore, the video and audio signals displaying the product's consumers and their children are capable of being viewed by third persons up to a football field's distance from the consumers' home and expected zone of privacy.

---

[1] *See* http://www.summerinfant.com/categories_products_view/141/Day---Night%AE--Video-Monitor.html; http://www.toysrus.com/product/index.jsp?productId=2437590&moduleName=Brand+Name+Secondary.

5

24. This material fact is glaringly absent from the Video Monitor's box or any advertising for the Video Monitor.

25. Defendants' failure to give advanced notice to the purchasing consumer of the product's vulnerability subjects such consumers and their children to unknowingly having themselves, their home and their actions broadcast to third parties.

26. Similarly priced video baby monitors with similar features to the Video Monitor come equipped with encryption.

27. Had the Defendants disclosed their failure to provide even basic encryption, the Video Monitors would have been less marketable or unmarketable altogether.

28. Defendants' failure to provide and/or to disclose the Video Monitor's lack of encryption defect has in turn placed the purchases of the Video Monitors and their families at serious risk from both a safety and privacy standpoint.

**Background Facts Specific to Named Plaintiff's Claims**

29. In or around June 2008, Plaintiff purchased a Video Monitor from Defendant TRU at its store located at 481 E. Roosevelt Road, Lombard, Illinois. The Video Monitor was designed, manufactured, constructed, assembled, inspected, and sold by Defendant Summer Infant.

30. Plaintiff began using the Video Monitor shortly after its purchase for the purpose of monitoring his newborn baby. The base unit was placed in his baby's room, and the receiving unit was moved to whatever room in the house he or his wife would be.

31. For convenience, Plaintiff kept the base unit, which was located in his baby's room, turned on at all times.

32. Both Plaintiff and his wife would enter the baby's nursery at all hours of the day and night to care for their child.

33. At all times, they believed they were in the privacy of their own home and, accordingly, were not concerned with their state of dress while in the baby's room, nor the content of their conversation.

34. Plaintiff's wife breast-fed their baby and would often feed to so while in the baby's room while the Video Monitor base unit was on.

35. Approximately six months after his purchase of the Video Monitor, Plaintiff's neighbor, who had recently had twin babies, informed Plaintiff that the video and audio from Plaintiff's baby monitor was being received on the neighbor's own video monitor, which was the same brand as Plaintiff's.

36. The neighbor informed Plaintiff that Plaintiff's baby's room was completely visible to the neighbor, and that he could see and hear everything that occurred within the room, and could hear conversation that occurred outside of the room.

Plaintiff went to his own Video Monitor to confirm what the neighbor had told him, and was shocked to know that by switching to the channel opposite to the channel that he viewed his own child on, he could view and hear his neighbor's children and their room.

37. As soon as Plaintiff learned that the Video Monitor was broadcasting the sights and sounds of his baby's room and those within the home, Plaintiff ceased using the device.

38. Plaintiff then contacted Summer Infant's customer service department and told a Summer Infant customer service representative (the "SI Representative") that his neighbor's receiver was picking up the audio-visual feed from Plaintiff's video monitor, and vice versa.

39. The SI Representative placed the Plaintiff on hold for a period of time, and when he returned, he told Plaintiff that there is no security when using the Video Monitor. In other words, Plaintiff was not informed that he was incorrectly using the device so as to disable any encryption; rather, he was informed for the first time that there was no encryption.

40. The SI Representative suggested that Plaintiff purchase one of its more expensive models, which he said was "more secure." On information and belief, one or more of the Defendants more expensive video baby monitors broadcasts its signals in an encrypted manner.

41. The SI Representative also stated that there was "nothing they could do" in terms of replacing the product with the more expensive unit because (a) the product was not "malfunctioning," (b) the product was out-of-warranty, and (c) Plaintiff no longer had his receipt for the purchase.

42. Plaintiff requested a refund so that he could at least apply the amount he already spent to the purchase of Summer Infant's more expensive product; Plaintiff's refund request was refused.

43. The customer service representative took Plaintiff's name and said that someone would follow up with him – no one ever did.

## **CLASS ALLEGATIONS**

44. This action is brought by the Plaintiff individually and on behalf of a class of all persons resident in the United States who purchased the Video Monitor: 1) manufactured, marketed, and distributed by Defendant Summer Infant, and 2) marketed and sold by Defendant TRU.

45. The class is so numerous that joinder of all members is impracticable. According to the sworn testimony of Summer Infant's Maram Abdel-Azim, the number of Video Monitors sold from December 2006 through November 21, 2009 totals 134,224 units.

46. There are questions of law and fact common to the members of the class, which questions predominate over any questions affecting only individual class members. These questions include, but are not limited to, the following:

   a. Whether Defendants engaged in a pattern or practice of selling the subject Video Monitors without disclosing that such monitors broadcast unencrypted signals;

   b. Whether Defendants concealed the material fact that it was selling the subject Video Monitors without disclosing that such monitors broadcast unencrypted signals;

   c. Whether Defendants advertised and sold the subject Video Monitors as a safety device meant to provide for the purchasers' "peace of mind" and whether this was a false and/or misleading statement or representation; and

   d. Whether Defendants engaged in consumer fraud, deceptive trade practices, or other unlawful acts.

47. Plaintiff's claims are typical of the claims of the putative Class members, including:

9

      a.      Plaintiff and all putative Class members purchased the same Video Monitors;

      b.      Defendants failed to place warnings on the Video Monitors' packages warning consumers about the fact that the video and audio signals transmitted by the baby monitors in question were unencrypted and could be viewed by others outside of the home, thereby depriving consumers, including Plaintiff and the members of the Class, the opportunity to make an informed decision to purchase or not purchase the Video Monitors.

      c.      Defendants designed, manufactured, distributed, marketed and/or sold the Video Monitors knowing that the video and audio signals transmitted from the Video Monitors were unencrypted and thus could be viewed by third parties outside the Class members' homes; and

      d.      Defendants designed, manufactured, distributed, marketed and/or sold the Video Monitors knowing that the products could not be safely used for their ordinary and intended purpose, which was to monitor infants without jeopardizing the Class members' privacy; Defendants designed, manufactured, and/or distributed the concerned baby monitors such that he video and audio signals transmitted by the baby monitors were available to anyone with a similar device nearby even though there were reasonable and cost-effective means to limit the audio-visual transmission in accord with the intended purpose.

48. Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of class actions and consumer fraud claims.

49. A class action is appropriate for the fair and efficient adjudication of this matter in that the Defendants have inflicted similar damages to a large number of persons through a single course of conduct and individual actions are not economical. The size of each putative Class member's actual damages is too small to make individual litigation an economically viable option. According the sworn testimony of Maram Abdel-Azim the retail price for the Video Monitors was $109.99 or under.

50. This Court and the parties would enjoy economies in litigating common issues on a class-wide basis instead of a repetitive individual basis.

51. No unusual difficulties will likely occur in the management of the Class as all questions of law or fact to be litigated at the liability stage are common to the putative Class and all compensatory relief is concomitant with a liability finding and can be calculated by automated and objective means.

52. Plaintiff's claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' course of conduct, as described above.

## CLAIMS FOR RELIEF

### Count I – Unfair and Deceptive Trade Practices (against all Defendants)

53. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 52, as though fully set forth herein.

54. Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq* and those other state consumer protection statutes that are in all material respects similar to it ("Consumer Protection Laws").

55. Section *2 o*f the ICFA, 815 ILCS 505/2, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared

unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission. (footnotes omitted)

56. Section 10a of the ICFA , 815 ILCS 505/10A, provides in pertinent part:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . .

\* \* \*

(b) Except as provided in subsections (f), (g), and (h) of this Section, in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

57. Plaintiffs and other Plaintiffs Class members are "consumers" or "persons," as defined under the ICFA, 815 ILCS 505/1 *et seq.* and other Consumer Protection Laws.

58. Defendants' conduct, as alleged herein, occurred in the course of trade and commerce.

59. At all relevant times, Defendants were engaged in the design, manufacturing, assembling, distributing, conveying and/or selling of the Video Monitors in the ordinary course of business. Defendants designed, manufactured, assembled, conveyed and/or sold the units to consumers, knowing that they would be used in consumers' homes to transmit private and personal live images and sound of people, including babies, within the home.

60. Defendants were aware or should have been aware that the transmission from the device could be viewed, not only by the intended viewer(s), but by anyone with a similar device

or a device capable of receiving the unencrypted signals from the Video Monitor within a certain radius that exceeds most homes.

61. Defendants knew or should have known that such unencrypted broadcast damaged the Class members by exposing their homes, families and aspects of their private lives to third parties.

62. Defendants omitted the material fact that the Video Monitors broadcast in an unencrypted fashion in both their advertising and warnings on the device's box.

63. The Defendants knew and were aware that if they prominently disclosed on the Video Monitors' box the ease in which third parties could view the unencrypted signal from the Video Monitors that the Defendants would have to have charged substantially less for the Video Monitors.

64. Defendants created their advertisings and warnings on the Video Monitors' box with the intent that Plaintiff and the Class members would rely on the information provided, but omitted the material fact that the Video Monitors broadcast audio and video pictures in an unencrypted fashion.

65. Had the Defendants not engaged in the deceptive omission of material fact described above, Plaintiff and the members of the Class would have been presented with an informed choice as to whether or not to buy the device and would have also been presented with the disclosures necessary to modify, if possible and if they so chose to, their use of the device to avoid a breach of their privacy.

66. Defendants' material omissions to Plaintiff and the Class members constitute unfair and deceptive acts or practices in violation of the Consumer Fraud and Deceptive Business Practices Act of the State of Illinois, the state of residence of the Plaintiff. Plaintiff would not have purchased the Video Monitor if he saw anything on the products' outer packaging that noted that the signals broadcast from the Video Monitor were not encrypted, and therefore that by using unwittingly using the product, he would be allowing strangers to view and hear his family in the privacy of their own home.

67. Plaintiff and the Class members have been deprived of the right to have purchased the Video Monitors with full knowledge of the fact that their private conversations and conduct was being broadcast outside of the secure confines of their homes in an unencrypted fashion.

68. Plaintiff and the Class members were damaged by the cumulative and indivisible nature of Defendants' conduct. The purpose of that conduct, directed at consumers, was to create demand for and to sell the Video Monitors. Each aspect of Defendants' conduct combined to create sales of the Video Monitors. The Video Monitors were overpriced because they did not allow Plaintiff and the Class members to securely monitor their children's' rooms without unknowingly subjecting them to an invasion of privacy. Defendants could not have sold the Video Monitors at the price charged if consumers had been made aware with warnings on the box that the Video Monitors would broadcast the consumers' private conversations and conduct outside of the secure confines of the consumers' homes.

69. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class members have been damaged in that they would not have paid the selling price but for

the wrongful conduct. Further Plaintiff and the Class members have been damaged in that they have had their privacy and security unknowingly subjected to disclosure.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of the Plaintiff and the members of the Class and against the Defendants for:

    A)    Actual and punitive damages;

    B)    An injunction restraining future non-disclosures;

    C)    Restitution, disgorgement, and other equitable monetary relief;

    D)    Attorneys fees, litigation expenses and costs; and

    E)    Any other relief this court deems equitable and just.

### Count II – Breach of Implied Warranty Pursuant to the Magnuson-Moss Warranty Act (against all Defendants)

70. Plaintiff realleges Paragraphs 1 through 52 as if fully set forth herein.

71. The Magnuson Moss Warranty Act allows for a civil action by consumers for failure to comply with implied warranties arising under state law. *See* 15 U.S.C. § 2310 (d)(1).

72. The Magnuson Moss Warranty Act confers jurisdiction in this Court for the enforcement of state law breach of implied warranty claims. *See* 15 U.S.C. §§2301(7) and 2310(d)(1)(A).

73. Plaintiff, through his counsel, notified Defendants of their breach of implied warranties under state law and the Magnuson Moss Act, 15 U.S.C. §2310(e), and demanded relief for the breach. (*See* notice and demand letters attached as Exhibit A). Defendants responded and refused to rectify their breach. (*See* letter attached as Exhibit B).

74. Defendants, in the manufacture, production, marketing and sale of the Video Monitors warranted to Plaintiff and other members of the Class that the Video Monitors were fit for their ordinary purpose, which was the monitoring of infants by their parents or caregivers in a secure manner, and not by others outside the home.

75. Defendants breached the implied warranty of merchantability under Illinois and other states' laws by selling the Video Monitors that cannot securely be used for their ordinary purpose, because the video and audio transmitted by the baby monitors can be viewed and heard by third parties.

76. Defendants' Video Monitors were in fact unmerchantable because they could not be used for their ordinary and intended purpose.

77. Defendants knew or should have known that the Video Monitors did not meet the capabilities as represented and marketed.

78. Plaintiffs and members of the Class have been and will be damaged, and have suffered and will suffer direct economic damage, including the cost of the Video Monitors.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of the Plaintiff and the members of the class and against the Defendants for:

A) Actual and Punitive damages;

B) An injunction restraining future non-disclosures;

C) Restitution, disgorgement, and other equitable monetary relief;

D) Attorneys fees, litigation expenses and costs; and

E) Any other relief this court deems equitable and just.

## Count III- Unjust Enrichment (against all Defendants)

79. Plaintiff realleges Paragraphs 1 through 52 as if fully set forth herein, and alleges this Count in the alternative.

80. Defendants received the benefit of money from the Plaintiff and members of the Class having purchased the Video Monitors at issue in this case under circumstances in which, according to equity and good conscience, Defendants ought not to retain such benefit.

81. Defendants received money from Plaintiff and the Class members from the payment for the Video Monitors, which payments were excessive and unreasonable as a result of Defendants' misrepresentations that the devices would afford the purchasers "peace of mind" when the very same Video Monitors subject such purchasers family to view by third parties up to 350 feet outside of the purchaser's home.

82. The Video Monitors that Defendants designed, manufactured, distributed, marketed, and sold were unsafe and unfit for their intended purpose and therefore, were not worth the money that Plaintiff and the Class members conferred upon the Defendants.

83. In addition, Defendants' failure to clearly notify intended purchasers that use of the Video Monitors placed all Class members and their families at risk of being unwittingly viewed by strangers in a place where they otherwise felt secure allowed for Defendants to inequitably profit from the sale of such devices.

84. As a result of the above, Plaintiff and other members of the Class have conferred a benefit on Defendants, Defendants are aware of this benefit, and Defendants voluntarily accepted and retained the benefit conferred on them.

85. Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount by which each Class member enriched Defendants and for which Defendants have been unjustly enriched.

86. By reason of the foregoing, Defendants are liable to Plaintiff and members of the Class the amount by which each Class member enriched Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of the Plaintiff and the members of the class and against the Defendants for:

A) An order that Defendants must disgorge all monies unjustly enriched through their unfair marketing and sale of the Video Monitors for the benefit of Plaintiffs and the class members;

B) Any other relief this court deems equitable and just.

### Count IV – Negligence (as Individual Claim against All Defendants)

87. Plaintiff realleges Paragraphs 1 through 52 as if fully set forth herein.

88. Defendant Summer Infant, by and through its agents and servants, carelessly and negligently; a) manufactured the Video Monitor for sale to consumers, and b) failed to give adequate warnings about the dangers associated with the use of the product, to wit, the fact that use of the product would broadcast an unencrypted signal of the sights and sounds inside the consumer's home up to 350 feet outside of this expected zone of privacy.

89. At the time of purchase, Defendant TRU, individually and by and through its agents and servants, carelessly and negligently; a) sold and distributed the Video Monitor; and b) failed to give adequate warning as to the dangers of the Video Monitor, to wit, the fact that use of the product would broadcast an unencrypted signal of the sights and sounds inside the consumer's home up to 350 feet outside of this expected zone of privacy.

90. As a direct and proximate result of one or more of the foregoing wrongful acts of the Defendants, and each of them, individually, jointly, and in combination with one another, Plaintiff, his family, and the activities within the confines of their home were unwittingly broadcast in an unencrypted manner to others outside their home without their knowledge or consent.

91. As a further direct and proximate result of the negligence and carelessness of Defendants as described above, Plaintiff has been harmed in the following ways:

    a. the Plaintiff's privacy was invaded, by causing the public disclosure of private facts to unintended third parties;

    b. Plaintiff's emotional well-being was damaged when he learned that he and his family had been watched within their home without their knowledge or consent and in a place where they had the utmost expectation of privacy; and

    c. Plaintiff's solitude, seclusion and private affairs were interfered with.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of the Plaintiff and the members of the class and against the Defendants for:

        A)        Actual and punitive damages;

        B)        Any other relief this court deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs requests a jury trial on any and all counts for which trial by jury is permitted by law.

        Wes Denkov individually and on
        behalf of a class of similarly situated individuals


        /s/ Nicole Nehema Auerbach
        One of their attorneys

Nicole Nehama Auerbach
Henry E. Turner
Lisa R. Castle
VALOREM LAW GROUP LLC
35 E. Wacker Dr., Ste. 2900
Chicago, IL 60601
Telephone: 312.676.5460
Fax: 312.676.5499


Aron D. Robinson
The Law Office of Aron D. Robinson
19 S. LaSalle St., Ste. 1200
Chicago, IL 60603
Telephone: 312.857.9050
Fax: 312.857.9054


Lance Raphael
The Consumer Advocacy Center, PC
180 W. Washington, Ste. 700
Chicago, IL 60602
Telephone: 312.782.5808
Fax: 312.377.9930