# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **ALISSA JAMISON, MANDY BRANTLEY**<br>**on behalf of themselves individually**<br>**and all others similarly situated,** | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>)    **No. 09 C 7513** |
| **v.** | )<br>)    **Judge Ruben Castillo** |
| **SUMMER INFANT (USA), Inc., a Delaware**<br>**Corporation, and TOYS "R" US d/b/a**<br>**BABIES "R" US, a Delaware Corporation,** | )<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

## MEMORANDUM OPINION AND ORDER

Alissa Jamison ("Jamison") and Mandy Brantley ("Brantley") (collectively, "Plaintiffs")

bring this class action against Summer Infant (USA), Inc. ("Summer Infant"), and Toys "R" Us-

Delaware, Inc. ("Toys 'R' Us")[1] (collectively, "Defendants") for alleged violations of state and

federal law.[2] Presently before the Court is Defendants' motion to dismiss the second amended

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 63, Defs.' Mot.) For the

reasons stated below, the motion is denied in part and granted in part.

### RELEVANT FACTS

The products at issue in this case are baby monitors manufactured by Summer Infant and

sold by Babies "R" Us that were purchased and used by Plaintiffs (hereinafter, the "Video

Monitors"). (R. 62, Second Am. Compl. ¶¶ 17-19.) Baby monitors are used by parents and

caretakers to monitor the sounds, and more recently, the visual display in a child's room. (*Id.* ¶

---

[1] According to Defendants, Toys "R" Us-Delaware, Inc. was incorrectly sued as "Toys 'R' Us d/b/a Babies 'R' Us." (R. 63, Defs.' Mot. at 1.)

[2] As discussed in more detail below, the original named plaintiff, Wes Denkov, was replaced in the second amended complaint by the currently named plaintiffs.

13.) The Video Monitors have two components: (1) "a base unit which is switched to 'on' and placed in the room where the baby is"; and (2) "a receiving unit that receives the audio and/or video transmitted by the base unit." (*Id.* ¶ 21.)

The Video Monitors at issue here "use public airwaves to transmit signals, are unencrypted, and are thus susceptible to the signal being picked up by other monitors or receivers." (*Id.* ¶ 17.) According to Plaintiffs, the video and audio signals are capable of being viewed by third persons as far away as "a football field's distance from the consumers' home," and "it has been documented that video monitors like those at issue in this case can be picked up by individuals driving through neighborhoods with receivers in their vehicles." (*Id.* ¶¶ 24-25.) Consumers purchase the Video Monitors as a safety and convenience measure to monitor their children inside the privacy of their own homes. (*Id.* ¶ 12.) Thus, Plaintiffs contend, "it is foreseeable that the privacy and personal safety of the consumers is compromised when the Video Monitors broadcast the children's images, the inside of the home, and the activities going on within the home for a great distance outside of the consumers' homes." (*Id.*)

The fact that the Video Monitor's signal is unencrypted is absent from the Video Monitors' boxes and advertising for the Video Monitors. (*Id.* ¶ 26.) Video baby monitors of comparable price and with similar features as the Video Monitors use an encrypted signal. (*Id.* ¶ 28.) Plaintiffs claim that the Video Monitors would have cost less or would have been less marketable had there been a disclosure that the Video Monitors fail to provide basic encryption, and that Defendants' failure to disclose the lack of encryption has placed the purchasers of the Video Monitors and their families at serious risk from both a safety and privacy standpoint. (*Id.* ¶¶ 29-30.)

## A.    Jamison's Claims

Jamison purchased two Video Monitors, specifically Summer Infant's Model No. 02090. (*Id.* ¶ 18.) She purchased the first Video Monitor in or around 2006 at a Babies "R" Us store in Massachusetts. (*Id.* ¶ 31.) She used this Video Monitor in Illinois to monitor her infant son. (*Id.*) Jamison purchased a second Video Monitor in the spring of 2008 at a Babies "R" Us store in Illinois. (*Id.*) This second Video Monitor was used to view her newborn daughter in their home in Illinois. (*Id.*)

Jamison placed the base units of the two Video Monitors, which she kept on at all times, in each child's respective room. (*Id.* ¶¶ 33-34). The receiving units of the Video Monitors were placed in the room where Jamison or her husband were located. (*Id.* ¶ 33.) Jamison says she and her husband entered their children's rooms to care for their children at all hours of the day and night, in various states of dress. (*Id.* ¶¶ 35-36.) Jamison breastfed both of her children when they were babies, often while in the baby's room where the Video Monitor base unit was left on. (*Id.*)

After purchasing the second Video Monitor, while watching the receiving unit one day, Jamison saw a neighbor's son appear on the monitor. (*Id.* ¶ 37.) The neighbor lived on the fourth floor of a building across the street from Jamison. (*Id.*) Both Jamison and her neighbor "were shocked to learn that their Video Monitors had this type of transmission capability." (*Id.* ¶ 38.) Jamison has since changed the way she uses the Video Monitors, and would not have purchased them had she known they broadcasted the images of her children and her children's rooms to the public. (*Id.* ¶ 39.)

## B.    Brantley's Claims

Brantley had a similar experience as Jamison. Brantley purchased Summer Infant Model No. 02220 at a Babies "R" Us store in Colorado in or around February 2008. (*Id.* ¶¶ 18, 40.) Brantley used the Video Monitor in South Carolina to monitor her baby. (*Id.* ¶ 41.) Like Jamison, Brantley was unaware that the Video Monitor was transmitting the images of her baby's room to the public, so she entered her baby's room "at various times of day and in varying states of dress." (*Id.* ¶ 42.)

At some point in 2009, Brantley's neighbor informed her that he could see her on his Video Monitor. (*Id.* ¶ 43.) Brantley was "appalled" to learn that this was possible, and called Summer Infant's customer service line. (*Id.* ¶¶ 44-45.) She was told that she could not be assisted because she was outside of the one-year warranty period. (*Id.* ¶ 45.) Brantley would not have purchased the Video Monitor had she known it was capable of broadcasting the image and sounds of her baby's room to the public. (*Id.* ¶ 46.)

## PROCEDURAL HISTORY

On December 3, 2009, Defendants removed this case to federal court pursuant to 28 U.S.C. § 1446, as amended in relevant part by the Class Action Fairness Act of 2005, 28 U.S.C. § 1332. (R. 1, Not. of Removal.) In the initial state court complaint, the named plaintiff was Wes Denkov ("Denkov"). (*Id.*, Ex. A.) On December 4, 2009, the Court dismissed the state court complaint without prejudice. (R. 8, Minute Entry.) Denkov filed an amended complaint on December 21, 2009. (R. 12, Am. Compl.) On January 11, 2010, Defendants filed a motion to dismiss the amended complaint. (R. 28, Defs.' Mot. Am. Compl.) Denkov filed a motion to substitute a party on March 22, 2010, which was amended on March 31, 2010. (R. 37, Pl.'s Mot. to Substitute Party; R. 40, Pl.'s Am. Mot. to Substitute Party.) On April 21, 2010, the Court

denied Denkov's amended motion to substitute a party and granted Defendants' motion to dismiss, dismissing the amended complaint without prejudice. (R. 47, Minute Entry.)

On November 11, 2010, the second amended complaint (the "complaint") was filed with Jamison and Brantley as the named plaintiffs. (R. 62, Second Am. Compl.) In Count I of the complaint, Plaintiffs allege that Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, by omitting in the advertising and warnings on the Video Monitors' boxes the material fact that the product broadcast in an unencrypted fashion. (R. 62, Second Am. Compl. ¶¶ 56-73.) In Count II, Plaintiffs aver that Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310, *et seq.* ("Magnuson-Moss Act" or the "Act") by breaching the implied warranty of merchantability under Illinois and other states' laws by selling products that cannot be used securely for their ordinary purpose. (R. 62, Second Am. Compl. ¶¶ 74-82.) In Count III, Plaintiffs allege a claim for unjust enrichment. (*Id.* ¶¶ 83-90.) Finally, in Count IV, Plaintiffs claim that Defendants were negligent in the manufacturing, distribution, and sale of the Video Monitor and failed to give adequate warnings that the Video Monitor could broadcast an unencrypted signal. (*Id.* ¶¶ 91-96.)

Defendants moved to dismiss the complaint on December 2, 2010. (R. 63, Defs.' Mot.) In their motion, Defendants argue that Plaintiffs cannot state a claim upon which relief can be granted because Plaintiffs' claims are preempted by federal regulations, Plaintiffs have no expectation of privacy, and the Video Monitors functioned as designed. (*Id.* at 2-3.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge*

*No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In ruling on a motion to dismiss, the Court construes

the complaint "in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts

as true, and draw[ing] all inferences in her favor." *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d

759, 763 (7th Cir. 2010). To survive a motion to dismiss for failure to state a claim, the

complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the

claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on

which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to

relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d

1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should

decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank*,

*N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule

12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a

story that holds together." *Id.* In other words, "the court will ask itself *could* these things have

happened, not *did* they happen." *Id.*

## ANALYSIS

**I.**     **Count I: ICFA**

In Count I, Plaintiffs allege that Defendants violated the ICFA, 815 Ill. Comp. Stat. 505/1

*et seq.*, and other state consumer protection statutes that are materially similar, by failing to

include the material fact that the Video Monitors broadcast in an unencrypted manner in the

advertising and warnings for the Video Monitors on the product's boxes. (R. 62, Second Am.

Compl. ¶¶ 56-73.) The ICFA makes it "unlawful to use deception or fraud in the conduct of

trade or commerce."[3] *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). It provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices," including "false promise[s], misrepresentation[s] . . . or omission[s] of any material fact," in certain commercial transactions. *Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (citing 815 Ill. Comp. Stat. 505/2). Under the ICFA, Plaintiffs must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005). Claims under ICFA "are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure." *Greenberger*, 631 F.3d at 399 (citation omitted).

Defendants claim that Count I must be dismissed for several reasons. First, Defendants contend that the claim is preempted by federal law. (R. 63, Defs.' Mot. at 4-5.) Second, Defendants maintain that the ICFA exempts Defendants' labeling practices because they are

---

[3] The relevant provision provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 Ill. Comp. Stat. 505/2.

permitted by federal regulations. (*Id.* at 5.) Third, Defendants claim that there is no cause of action under the ICFA because the allegedly fraudulent acts have little or no connection to Illinois. (*Id.* at 6.) Finally, Defendants argue that Plaintiffs have failed to meet the pleading standards under the ICFA because they failed to plead that the Video Monitors malfunctioned or that they suffered actual damages. (*Id.* at 7-8.)

## A. Preemption

Defendants contend that Plaintiffs' consumer fraud claims under the ICFA are preempted by federal regulations developed pursuant to the Federal Communications Act ("FCA") by the Federal Communications Commission ("FCC"). (R. 63, Defs.' Mot. at 4.) Federal law can preempt state law in three ways. First, express preemption occurs when Congress explicitly states the extent to which its enactments preempt state law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990). Second, under field preemption, state law is preempted "where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79. Finally, under conflict preemption, federal law can preempt state law "to the extent that [the state law] actually conflicts with federal law." *Id.* Federal preemption is treated as an affirmative defense, and Defendants bear the burden of proving preemption. *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 309 (7th Cir. 2010).

In this case, Defendants claim that conflict preemption bars Plaintiffs' claims under the ICFA. (R. 63, Defs.' Mot. at 4.) Conflict preemption "exists if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Hogland v. Town of Clear Lake*, 415 F.3d 693, 696 (7th Cir. 2005) (quoting *Freightliner Corp. v.*

*Myrick*, 514 U.S. 280, 287 (1995)). Defendants do not contend that it is impossible to comply with both federal regulations as well the ICFA. Rather, Defendants argue that allowing Plaintiffs' ICFA claim to proceed "would frustrate" Congress' objective in creating the FCC and FCA, which was "to create technical standards and operations rules without regard to state boundaries and varying local jurisdictions." (*Id.* at 5 (citing *Fed. Radio Comm'n v. Nelson Bros. Bond Mortg. Co.*, 289 U.S. 266, 279 (1933)).)

Defendants specifically point to FCC regulations pertaining to the regulation of "Radio Frequency Devices" under 47 C.F.R. § 15. (*Id.* at 4.) According to Defendants, the Video Monitors are certified by the FCC as a Low Power Communication Device Transmitter under 47 C.F.R. § 15. (*Id.*) Additionally, the Video Monitors comply with the technical labeling requirements regulation set forth in 47 C.F.R. § 15.19. (*Id.*) The labeling regulation requires that the device "bear the following statement in a conspicuous location on the device: This device complies with Part 15 of the FCC Rules. Operation is subject to the following two conditions: (1) This device may not cause harmful interference, and (2) this device must accept any interference received, including interference that may cause undesired operation." 47 C.F.R. § 15.19. Given this labeling requirement and the FCC's broad authority "to regulate all Radio Frequency Devices," Defendants argue, Plaintiffs' claim under ICFA is barred by conflict preemption.

The Court does not find this argument persuasive. Plaintiffs' allegations pertain to Defendants' deceptive omission of material facts about the product on the outside packaging of the Video Monitors, not to the technical labeling requirements in the FCC regulations. Even assuming Defendants have correctly identified the objectives of Congress in creating the FCC,

Defendants have failed to show how Plaintiffs' ICFA claim pertaining to Defendants' marketing and advertising practices would frustrate Congress' goal of creating uniform "technical standards and operations rules." Section 15.19, the main regulation upon which Defendants rely, requires that a label stating the device is in compliance with FCC technical standards be affixed to the device. (R. 65, Pls.' Resp., Ex. A at 5.)[4] This regulation must be complied with before "marketing of the transmitter may begin." (*Id.*) As Plaintiffs point out, "compliance with the FCC regulations is the price of entry into the marketplace, not a shield from operating in that marketplace." (R. 65, Pls.' Resp. at 5.) Thus, Defendants' compliance with the technical labeling requirements of Section 15.19 does not protect them from Plaintiffs' allegations that their marketing and advertising practices were unfair or deceptive.

In support of this distinction, Plaintiffs cite *Zapka v. The Coca-Cola Company*, No. 99 C 8238, 2001 WL 1558276 (N.D. Ill. Dec. 5, 2001). In *Zapka*, the plaintiff brought suit under the ICFA alleging that the Coca-Cola Company advertised and represented that Diet Coke contained only aspartame or Nutrasweet, even though fountain Diet Coke contained saccharin. *Id.* Coca-Cola claimed that its compliance with FDA labeling regulations was a complete defense. *Id.* at *5. The court rejected this argument, stating that "while the FDA has specialized expertise in the branding and labeling of food, it does not have specialized expertise in the marketing and advertising of food or drinks." *Id.* at *6. Plaintiffs in this case similarly argue that the FCC

---

[4] Exhibit A is a bulletin written by the FCC's Office of Engineering and Technology. (R. 65, Pls.' Resp., Ex. A, FCC, Office of Engineering and Technology Bulletin No. 63, Understanding the FCC Regulations for Low-Power, Non-Licensed Transmitters (Oct. 1993).). This bulletin is available on the FCC's website, and "provides a basic understanding of the FCC regulations for low-power, unlicensed transmitters, followed by some answers to commonly asked questions." (*Id.* at 2.) In resolving a motion to dismiss, a district court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

regulates technical aspects of radio communication, but "has no specialized expertise in the representations made on product packaging." (R. 65, Pls.' Resp. at 5.)

In response, Defendants, with no citation to any authority, claim that "[o]utside packaging and product inserts are product labeling, not marketing . . . Accordingly, the FCC's regulations . . . outlined in 47 C.F.R. § 15.[1]9 govern the labeling disclosure requirements for the Video Monitors." (R. 66, Defs.' Reply at 1.) As discussed above, however, this conclusory statement finds no support in the regulations cited by Defendants. Accordingly, the Court concludes that Defendants have failed to meet their burden of showing that conflict preemption bars Plaintiffs' ICFA claim.

### B.    ICFA Exemption

Defendants next argue that Count I should be dismissed because the ICFA exempts from its coverage practices or transactions which are permitted by other laws. (R. 63, Defs.' Mot. at 5.) Defendants rely upon Section 10b(1) of the ICFA, which provides that "[n]othing in this Act shall apply to any of the following: (1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. 505/10b(1). In support, Defendants cite the Seventh Circuit's opinion in *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001), which states:

> Taken together, the [Illinois] cases stand for the proposition that the state [Consumer Fraud Act] will not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations. If the parties are doing something *specifically authorized* by federal law, section 10b(1) will protect them from liability under the CFA. On the other hand, the CFA exemption is not available for statements that manage to be in technical compliance with federal regulations, but

which are so misleading or deceptive in context that federal law itself might not regard them as adequate.

According to Defendants, Count I should be dismissed because the Video Monitors complied with the FCC regulations and the ICFA cannot impose higher disclosure requirements. (R. 63, Defs.' Mot. at 5.)

The Court rejects this argument. Defendants ignore that federal law must "*specifically authorize*[]" the conduct at issue for section 10b(1) to apply. *Bober*, 246 F.3d at 941. As explained immediately following the section Defendants quote from *Bober*, "[t]he question is thus whether the statements [the plaintiff] complains of are sufficiently within what is authorized by federal law that [the defendant] is entitled to section 10b(1) protection." *Id.*; *see also Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 41 (Ill. 2005) ("[M]ere compliance with applicable law does not necessarily bar Consumer Fraud liability. Instead, the conduct at issue must be specifically authorized."). Defendants once again point to the FCC labeling requirement, but as discussed above, that regulation merely requires that a device that meets the FCC's technical regulations be labeled as compliant before marketing of the devices may begin. It does not "specifically authorize" anything relating to how the devices are marketed or advertised. Thus, Defendant cannot seek protection under section 10b(1) because federal regulations do not "specifically authorize" the omission of material facts from the packaging of the Video Monitors, which is the practice giving rise to Plaintiffs' claims. *See Zapka*, 2001 WL 1558276, at *5 ("Compliance with the labeling and notification requirements of the FFDCA cannot exempt Coca-Cola from liability pursuant to section 10b of the Consumer Fraud Act because the FFDCA does not 'specifically authorize' the marketing practices of which Zapka complains.").

## C.    Illinois Connections

In addition to the preemption arguments discussed above, Defendants also argue that Plaintiffs' ICFA claim must be dismissed because the alleged fraudulent acts have little or no connection to Illinois. (R. 63, Defs.' Mot. at 6.) As Plaintiffs suggest, this argument is frivolous as it pertains to Jamison. A plaintiff "may pursue a private cause of action under the Consumer Fraud Act if the circumstances that related to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 853-54. In this case, Jamison, a resident of Illinois, purchased a Video Monitor at a Babies "R" Us store in Illinois, and used two Video Monitors in Illinois. (R. 62, Second Am. Comp. ¶ 31.) She clearly has standing to sue as a consumer under the ICFA, which defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Defendants marketed and sold the Video Monitors in Illinois, and thus ICFA applies to them even if their principal place of business is outside of Illinois because they engaged in "trade or commerce directly or indirectly affecting the people of [the State of Illinois]." *Id.*

Defendants do correctly argue that Brantley's claims fall outside of the ICFA. (R. 63, Defs.' Mot. at 6.) Plaintiffs, however, point out that Brantley does not allege a claim under the ICFA. (R. 65, Pls.' Resp. at 3.) Instead, her claims allege violations of the South Carolina Unfair Trade Practices Act ("SCUPTA"). (*Id.*) In their reply, Defendants argue that Plaintiffs did not properly plead that Defendants violated the SCUPTA. (R. 66, Defs.' Reply at 3-4.) Even assuming this argument was not waived, *see United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006) (arguments raised for the first time in a reply brief are waived), it is still a losing

13

argument. Plaintiffs allege that Defendants have violated "those other state consumer protection statutes that are in all material respects similar to [the ICFA]." (R. 62, Second Am. Compl. ¶ 57.) Even though the SCUPTA is not specifically mentioned in the complaint, Defendants were on notice of Plaintiffs' allegations that Defendants' conduct violated other state consumer protection laws that "are in all material respects similar to" the ICFA.[5] Plaintiffs need not plead law or legal theory. *See* Fed. R. Civ. P. 8; *Rabé v. United Air Lines, Inc.*, No. 09-3300, 2011 WL 677946, at *5 (7th Cir. Feb. 28, 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.") (citations omitted); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.3d 1073, 1077-78 (7th Cir. 1992) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this."). Because Jamison's claim has sufficient connections to Illinois and Defendants were on notice of Brantley's claim under the SCUPTA, the Court rejects Defendants' third argument pertaining to Plaintiffs' claim under the ICFA.

## D.     ICFA Pleading Requirements

Finally, Defendants argue that Count I should be dismissed because Plaintiffs fail to state a claim under the ICFA. (R. 63, Defs.' Mot. at 7.) Defendants contend that Plaintiffs' ICFA claim fails for two reasons. First, Defendants argue that Plaintiffs have not alleged that the Video Monitors had a defect that caused the Video Monitors to malfunction. (*Id.*) Second, Defendants claim that Plaintiffs have not alleged they suffered any actual damages. (*Id.* at 8.)

---

[5] If the SCUPTA is not "in all material respects similar to" the ICFA, that would be a different matter. However, Defendants do not raise that issue and thus the Court assumes for purposes of the motion to dismiss that the SCUPTA is "in all material respects similar to" the ICFA.

Regarding their first argument, Defendants are correct in pointing out that Plaintiffs have not alleged that their Video Monitors malfunctioned. This fact, however, is not fatal to Plaintiffs' ICFA claim because there is no requirement under the ICFA to plead a product "malfunction" to state a claim for deception. Instead, the omission or concealment of material facts can constitute the "deceptive act or practice" that causes "actual damage to the plaintiff." *See* 815 Ill. Comp. Stat. 505/2. While the omitted facts in many cases pertain to product defects because their materiality is easily established, the ICFA applies to the omission of any "material" information "in the conduct of trade or commerce," not just defects. *See, e.g., Galvan v. Nw. Mem. Hosp.*, 888 N.E.2d 529, 541 (Ill. App. Ct. 2008) (holding that plaintiff adequately pleaded concealment of information about rates and billing practices, but did not adequately plead damages); *see also Pappas v. Pella Corp.*, 844 N.E.2d 995, 1001 (Ill. App. Ct. 2006) ("While a plaintiff bringing a product liability claim must allege that a defect renders a product 'unreasonably dangerous,' neither 'defect' nor 'unreasonably dangerous' are elements of a Consumer Fraud Act claim."). A material fact "exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996) (citation omitted).

Here, Plaintiffs allege that Defendants omitted the fact that the Video Monitors were unencrypted from the packaging and advertising for the Monitors, (R. 62, Second. Am. Compl. ¶ 26), and that Plaintiffs would not have purchased the Video Monitors, or paid the selling price for the Video Monitors, had they known that they were not encrypted (*id.* ¶¶ 29, 39, 46). This is

sufficient to state a claim for the omission of material facts. Plaintiffs need not plead that the Video Monitors malfunctioned to sustain a claim under the ICFA.[6]

Defendant's second argument is that Plaintiffs do not and cannot allege that they suffered any actual damages as a result of Defendants' conduct. (R. 63, Defs.' Mot. at 8.) To state a claim under ICFA, a plaintiff must allege that he or she has "suffer[ed] actual damage as a result of a violation of th[e] Act." 815 Ill. Comp. Stat. 505/10a. To prove damages, a "plaintiff must allege that she has been harmed in a concrete, ascertainable way." *Frye v. L'Oreal USA, Inc.* 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). "Theoretical harm is insufficient. Damages may not be predicated on mere speculation, hypothesis, conjecture or whim." *Price*, 848 N.E.2d at 56 (Karmeier, J., concurring).

In this case, Plaintiffs allege that they would not have purchased the Video Monitors, or paid the purchase price for the Video Monitors, had this information been provided on the Video Monitors' packaging or in its advertising. (R. 62, Second Am. Compl. ¶ 69.) Plaintiffs thus claim as "actual damages" the amount they paid for the Video Monitors. (*Id.* ¶ 73.) The Court finds that this harm—the purchase price of the Video Monitors—is sufficiently concrete to meet the "actual damages" pleading requirement under ICFA. The Court therefore rejects the argument that Plaintiffs have failed to properly plead "actual damages" under the ICFA.[7]

---

[6] Plaintiffs correctly point out that the case cited by Defendants in support of their argument, *Yu v. Int'l Bus. Machines*, is inapposite. In *Yu*, the court held that dismissal of the plaintiff's ICFA claim was appropriate because nothing in the complaint alleged actual injury or damages. 732 N.E.2d 1173, 1177 (Ill. App. Ct. 2000). Instead, the plaintiff in *Yu* alleged only that the defect in the product "may cause potential harm," and thus his claims were only "conjecture and speculation." *Id.*

[7] The Court notes at this juncture that it makes no findings regarding the sufficiency of the pleadings regarding the other elements under ICFA or the heightened pleading standards of Rule 9(b) as Defendants only argued the pleadings were insufficient for the reasons discussed above.

Accordingly, because Defendants have failed to show Plaintiffs' ICFA claim is preempted or is otherwise deficient, the Court declines to dismiss Count I of Plaintiffs' complaint.

## II. Count II: Magnuson-Moss Act

Count II alleges that Defendants violated the Magnuson-Moss Act, 15 U.S.C. § 2310, because Defendants breached the implied warranty of merchantability under Illinois and other states' laws by selling a product that cannot be used securely for its ordinary purpose. (R. 62, Second Am. Compl. ¶¶ 74-82.) The Magnuson-Moss Act permits a suit for breach of "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). With the exception of two specific modifications to state law mandated by the Act, the Court must apply state law to determine the existence of an implied warranty. *Id.*

Defendants contend that Count II should be dismissed as to both Defendants because the Video Monitors are fit for their ordinary purposes. (R. 63, Defs.' Mot. at 9.) Defendants further claim that Count II should be dismissed as to Summer Infant because Plaintiffs have no privity with Summer Infant. (*Id.* at 10.)

### A. "Ordinary Purpose"

Defendants first argue that Plaintiffs have failed to plead that the Video Monitors are not "merchantable." (*Id.* at 9.) To allege a breach of implied warranty of merchantability under Illinois law, a plaintiff must plead: "(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Boston Scientific Corp.*, 792 N.E.2d 296, 299 (Ill. 2003) (citing 810 Ill. Comp. Stat. 5/2-314(1)). To be "merchantable," goods must, along

with other requirements, "pass without objection in the trade under the contract description"; "[be] fit for the ordinary purposes for which such goods are used"; and "conform to the promises or affirmations of fact made on the container or label if any." 810 Ill. Comp. Stat. 5/2-314(2).

Plaintiffs allege that the ordinary purpose of the Video Monitors is the "monitoring of infants by their parents or caregivers in a secure manner, and not by others outside the home." (R. 62, Second Am. Compl. ¶ 78.) Plaintiffs acknowledge that the Video Monitors perform one of its intended functions—the audio and visual monitoring of children. However, they maintain that because the Video Monitor broadcasts the sights and sounds of the home to third parties, it did not perform that function safely. (*Id.* ¶ 79.)

Defendants do not dispute that these allegations are in the Complaint or that they are sufficient under Rule 12(b)(6). Instead, Defendants' maintain that Plaintiff's claim must be dismissed because the Video Monitors are fit for their ordinary purpose, which is "for video and audio to be transmitted over a three-channel selection over a 350-foot range." (R. 63, Defs.' Mot. at 9.) This argument, however, attacks the merits, not the sufficiency, of Plaintiffs' claims, and is unavailing at this stage. Accordingly, the Court declines to dismiss Plaintiffs' Magnuson-Moss Act claim in Count II because Plaintiffs' have failed to plead that the Video Monitors are not "merchantable."

**B.    Privity**

Defendants next argue that Plaintiffs cannot allege a claim for breach of implied warranty against Summer Infant because the parties lack privity. (*Id.* at 10.) Because the Act does "not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson-Moss Act

therefore hinges entirely on the applicable state law." *Voelker v. Porsche Cars N. Am.*, 353 F.3d 516, 525 (7th Cir. 2003) (citations omitted). Under Illinois law, "privity of contract is a prerequisite to recover economic damages for breach of implied warrant," and privity of contract only exists between buyers and immediate sellers. *Id.* (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988)).

Defendants correctly argue that Plaintiffs lack privity of contract with Summer Infant because Summer Infant was not the "immediate seller" of the Video Monitors to Plaintiffs. *See id.* Plaintiffs, however, maintain that there is privity because Summer Infant gave an express written warranty to purchasers of the Video Monitors. (R. 65, Pls.' Resp. at 13.) While this argument has been successful in Illinois state court when a plaintiff brings suit under the Magnuson-Moss Act, *see, e.g., Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1064 (Ill. 2007), it has been rejected repeatedly in this district as contrary to the Seventh Circuit's interpretation of the Act. *See IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1000 (N.D. Ill. 2008) (listing cases). Plaintiffs have failed to persuade the Court that it should conclude otherwise.

Alternatively, Plaintiffs argue that privity exists between Plaintiffs and Summer Infant because of an agency relationship between Summer Infant and Toys "R" Us. (R. 15, Pls.' Resp. at 15.) In support of this argument, Plaintiffs cite the Illinois Supreme Court's decision in *Rothe*, 518 N.E.2d at 1029. Contrary to Plaintiffs' claims, however, *Rothe* does not recognize that an agency relationship can establish the privity necessary to assert breach of warranty claims under the Act. While the Illinois Supreme Court mentions the phrase "agency relationship" in the

19

opinion, it did so while merely attempting to construe a "rather ambiguous" count in the plaintiff's complaint. *Id.*

With *Rothe* failing to buttress this argument, Plaintiffs only support is an Ohio district court case decided in 1983. *See Staco Energy Products v. Driver Harris Co.*, 578 F. Supp. 700, 708 (S.D. Ohio 1983). The Court, however, is not persuaded that this case interpreting Ohio law provides any support for Plaintiffs' argument that an agency relationship establishes privity under Illinois law. As has been repeatedly recognized in this district, there is no authority that sanctions Plaintiffs' attempt to skirt the privity requirement for an implied breach of warranty claim under Illinois law. *See IWOI*, 581 F. Supp. 2d at 1000-01 (calling plaintiff's attempt to "create" rule that agency establishes privity "merely an effort to 'constitute an end run around the privity requirement' established" by Illinois case law); *Zaro v. Maserati N. Am., Inc.*, No. 07 C 3565, 2007 WL 4335431, at *4 (N.D. Ill. Dec. 6, 2007) (saying that there is "no Illinois case law supporting the proposition that a general agency principle creates privity between a purchaser and a non-selling manufacturer"); *Kutzler v. Thor Indust., Inc.*, No. 03 C 2389, 2003 WL 21654260, at *6 (N.D. Ill. July 14, 2003) (rejecting argument that an agency theory provides for privity under Illinois law). The Court accordingly grants Defendants' motion to dismiss Count II with respect to Summer Infant.

## III.    Count III: Unjust Enrichment

In Count III, Plaintiffs allege a claim for unjust enrichment. (R. 62, Second Am. Compl. ¶¶ 83-90.) To state a cause of action for unjust enrichment under Illinois law, a plaintiff must allege that the defendant has retained a benefit, to the detriment of the plaintiff, and that the retention "violates the fundamental principles of justice, equity, and good conscience." *HPI*

*Health Care Servs. Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679 (Ill. 1989) (citations omitted). In Illinois, "unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnel Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 2009) (citations omitted). "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Alliance Acceptance Co. v. Yale Ins. Agency*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995) (citation omitted). Here, Plaintiffs contend that Defendants were unjustly enriched by retaining payments for the Video Monitors because Defendants: (1) omitted material information that would have altered consumers' decision to purchase the Video Monitors or pay the purchase price of the Video Monitors, and (2) the Video Monitors were unfit for their intended purpose. (R. 62, Second Am. Compl. ¶¶ 83-90.) The Court finds that the complaint, with the allegations pertaining to the violation of the ICFA and for breach of implied warranty under the Magnuson-Moss Act, sufficiently states a claim for unjust enrichment.

Defendants make several argument to the contrary. First, Defendants argue that they disclosed that the Video Monitors use public airwaves in the warnings in the instruction manual included in the Video Monitors' box. (R. 63, Defs.' Mot. at 11.) In response, Plaintiffs state that this argument is irrelevant at the pleading stage because they claim that Defendants unjustly withheld material information about the product prior to the sale of the Video Monitors. (R. 65, Pls.' Resp. at 11.) The Court agrees. The existence of the warning in the instruction manual does not defeat Plaintiffs' claim for unjust enrichment at this stage. Second, Defendants maintain that because the Video Monitors complied with FCC labeling requirements, Plaintiffs

21

do not have a claim for unjust enrichment. (R. 63, Defs.' Mot. at 11.) As discussed above, however, the FCC labeling requirements do not protect Defendants from Plaintiffs' claims regarding Defendants' allegedly deceptive or fraudulent conduct in the advertising and marketing of the Video Monitors. Those regulations also do not undermine Plaintiffs' unjust enrichment claim. Finally, Defendants make several conclusory arguments pertaining to the merits of Plaintiffs' claims, which the Court will not address at this stage. (*Id.*) The Court thus denies Defendants' motion with respect to Count III because Plaintiffs have sufficiently stated a claim for unjust enrichment.

## IV. Count IV: Negligence

Plaintiffs' claim in Count IV is for negligence. Defendants make two primary arguments pertaining to Count IV. First, Defendants argue that the count should be dismissed because Plaintiffs fail to state a claim for common law negligence because they fail to adequately plead that Defendants owed Plaintiffs a duty. (R. 63, Defs.' Mot. at 12.) Second, Defendants claim that the count should be dismissed because it requests purely economic damages. (*Id.* at 15.)

To state a claim for negligence in Illinois, a plaintiff must allege the existence of "a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach." *Jones v. Chi. HMO Ltd. of Ill.*, 730 N.E.2d 1119, 1129 (Ill. 2000) (citation omitted). Regarding these elements, Defendants' sole argument is that Plaintiffs have not properly pled common law negligence because they have not adequately alleged that Defendants

owed them any duty.[8] (R. 63, Defs.' Mot. at 12.) In the complaint, Plaintiffs allege that

Defendants "had a duty to manufacture a product that did not put consumers who purchased it in

danger or subject them to invasion of privacy, and to adequately inform consumers deciding

whether or not to buy the product of the material facts relating to the product." (R. 62, Second

Am. Compl. ¶ 92.) Defendants do not dispute that these allegations are in the complaint or that

they are sufficient under Rule 12(b)(6). Instead, Defendants ignore these allegations and argue,

without citation to any authority, that "Defendants do not have a legal duty to put a label on the

outside of their Video Monitors that they may use public airwaves to transmit signals." (R. 63,

Defs.' Mot. at 12.) The Court rejects this unsupported and conclusory argument.

Next, Defendants argue that Count IV should be dismissed because Plaintiffs' claim is

barred by the Illinois economic loss doctrine enunciated in *Moorman Manufacturing Co. v.*

*National Tank Co.*, 435 N.E.2d 443, 449-50 (Ill. 1982). In *Moorman*, the Illinois Supreme Court

held that parties cannot sue in negligence to recover for purely "economic loss," or "damages for

inadequate value, costs of repair and replacement of the defective product, or consequent loss of

profits without any claim of personal injury or damage to other property." *Id.* The *Moorman*

doctrine is premised "upon the theory that tort law affords a remedy for loss occasioned by

personal injuries or damage to one's property, but contract law and the Uniform Commercial

---

[8] Defendants also argue that Plaintiffs cannot state a claim for negligence because the complaint does not have any factual allegations that indicate the Video Monitors publically disclosed any private facts. (R. 63, Defs.' Mot. at 13.) They similarly argue that Plaintiffs' failure to include factual allegations that they suffered any emotional distress precludes them from stating a claim for negligence. (*Id.* at 14.) Plaintiffs, however, point out that the allegations regarding emotional distress and the compromising of their privacy describe the injury caused by Defendants' alleged negligence; they are not distinct claims for relief. (R. 65, Pls.' Resp. at 10.) Defendants, apparently recognizing the incongruity of their arguments, did not respond to Plaintiffs' clarification of their claims, and the Court accordingly declines to address these arguments.

Code offer the appropriate remedy for economic losses occasioned by diminished commercial expectations not coupled with injury to person or property." *In re Ill. Bell Switching Station Litig.*, 641 N.E.2d 440, 444 (Ill. 1994). Thus, "[t]o recover in tort under the economic loss doctrine, a party must show harm above and beyond a party's contractual or commercial expectations." *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) (citing *In re Chi. Flood Litig.*, 680 N.E.2d 265, 276 (Ill. 1997)).

Here, it does not appear that *Moorman* is applicable to Plaintiffs' claims. Plaintiffs' request for relief includes damages for the emotional distress they suffered "when they learned that their families had been watched within their homes without their knowledge and consent and in a place where they had the utmost expectation of privacy[.]" (R. 62, Second Am. Compl. ¶ 96.) While Defendants contend that "Plaintiffs cannot support their claims of personal injury," (R. 66, Defs.' Reply at 5), that is not a relevant inquiry at this stage. Viewing the allegations of the complaint in the light most favorable to Plaintiffs, the harm they have suffered is beyond that of mere diminished commercial expectations. *See, e.g., Martin v. Wal-Mart Stores, Inc.*, No. 07 C 3458, 2007 WL 3231414, at *4 (N.D. Ill. Oct. 26, 2007) (declining to dismiss plaintiff's negligence claim under *Moorman* where plaintiff sought to recover for the emotional distress caused by purchase of an MP3 player from defendant containing pornographic images). Because Plaintiffs seek damages for personal injury, their claim is not barred by *Moorman*, and the Court declines to dismiss Count IV.

## CONCLUSION

For the foregoing reason, Defendants' motion to dismiss (R. 63) is denied in substantial part and granted in part. The motion to dismiss is DENIED as to Counts I, II with respect to

Toys "R" Us, III, and IV. The motion to dismiss is GRANTED as to Count II with respect to Summer Infant.

The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status on May 3, 2011 at 9:45 a.m. to set a firm litigation schedule.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** April 18, 2011